IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:18-CR-0263 |
| v. | : | |
| DAMON TODD CAREY | : | Judge Sylvia H. Rambo |

# M E M O R A N D U M

Presently before the court are Defendant Damon Todd Carey's ("Defendant") motions to suppress evidence found during a search of his vehicle and during a search of his residence (Docs. 27, 29) and to dismiss the indictment for a violation the Double Jeopardy Clause of the Fifth Amendment or a violation of the Compulsory Process Clause of the 6th Amendment and Defendant's 14th Amendment Due Process rights (Docs. 31, 73). For the reasons that follow, Defendant's motions will be denied.

## I. **Background**

### A. Procedural History

On December 10, 2008, Defendant was charged in a two-count indictment with Conspiracy to Distribute 50 Grams and More of Cocaine Base, in violation of 21 U.S.C. § 846 and Possession With Intent to Distribute 50 Grams and More of Cocaine, in violation of 21 U.S.C. § 841(a)(1). On September 3, 2009, Defendant was sentenced to 120 months imprisonment followed by five years of supervised

release. Defendant began his five-year term of supervised release on May 12, 2017. On June 21, 2018, the court sentenced Defendant to 46 months imprisonment for violating the conditions of his supervised release.

On August 8, 2018, the Defendant was charged in a three-count indictment with Possession With Intent to Distribute Cocaine Hydrochloride, in violation of 21 U.S.C. § 841(a)(1) (Count 1), Possession With Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 2), Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. 924(c)(1)(a) (Count 3). (Doc. 1.) A grand jury returned a superseding indictment on January 9, 2019, that added an additional defendant and allegations of a drug weight of 500 grams and more of cocaine hydrochloride. (Doc. 51.) On September 12, 2018, Defendant entered a plea of not guilty and was detained. (Docs. 15, 16.)

On November 5, 2018, Defendant filed (1) a motion to suppress physical evidence recovered from his vehicle (Doc. 27); (2) a motion to suppress physical evidence recovered during a search of his residence (Doc. 29); and (3) a motion to dismiss the indictment for a violation of the Double Jeopardy Clause related to the revocation of his supervised release and the resulting term of imprisonment (Doc. 31). A suppression hearing was held on December 6, 2018. (Doc. 48.) On January 15, 2019, Defendant filed an additional motion to dismiss the indictment or, in the alternative, suppress evidence based upon a violation of the Compulsory Process

2

Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, arguing that unknown police officers destroyed a box and bag that allegedly contained a large sum of money and was found in the trunk of Defendant's vehicle. (Doc. 76.) The Government has responded to Defendant's initial three motions to suppress but has not responded to the motion to dismiss or suppress based on violations of the Sixth Amendment. Because the time to respond thereto has lapsed, Defendant's motions are fully briefed and are ripe for disposition.[1]

## B. Relevant Factual Background

The court's recitation of the factual background is limited to those facts necessary to dispose of Defendant's motions. As noted above, Defendant began a term of supervised release on May 12, 2017, stemming from prior convictions. During his term of supervised release, Defendant violated the terms of his release on numerous occasions, including unauthorized travel, unprescribed opioid use, and police contact for domestic situations. Probation eventually reported these violations, and a warrant was issued for Defendant's arrest on March 27, 2018. (*See*

---

[1] Pursuant to Local Rule 7.6, the court will deem such a motion unopposed. Although deemed unopposed, the court is still mandated to consider whether the granting of the motion is appropriate. *Trickel v. Disc. Gold Brokers, Inc.*, No. 14-cv-1916, 2015 WL 12290017, *2 (M.D. Pa. July 21, 2015), *report and recommendation adopted sub nom. Trickel v. Disc. Gold Brokers, Inc.*, No. 14-cv-1916, 2015 WL 12517429 (M.D. Pa. Aug. 11, 2015); *see also Winkelman v. United States*, No. 01-cr-304, 2010 WL 11432872, *1 (M.D. Pa. Nov. 5, 2010) ("No opposing brief has been filed. Thus, according to the Middle District Local Rules, [the defendant's] motion is deemed unopposed. Now, therefore, for the following reasons, we will deny the motion without prejudice.").

Doc. 29-6.) On April 6, 2018, the United States Marshalls Service Fugitive Task Force ("Task Force") executed the warrant and arrested Defendant. At the time of the arrest, Defendant was operating a rented vehicle[2] in the vicinity of his residence. Prior to his arrest, Gary Duncan, a Deputy United States Marshall ("Marshall Duncan"), observed Defendant exit his residence and place a large bag into the trunk of the car. (Doc. 73-3, p. 13.) Marshall Duncan followed Defendant and eventually turned on his lights and sirens in an attempt to detain Defendant. (*Id.*) Marshall Duncan testified that it initially appeared that Defendant was not going to obey the signal to pull over, but at the last minute, Defendant swerved to the side of the street and struck a parked car. (*Id.* at 14-15.) After taking Defendant into custody, Duncan and other members of the Task Force performed a routine search and inventory of the vehicle. In the course of searching the vehicle, Marshall Duncan cleared the trunk to ensure that no other occupants were hiding therein. He stated that, in his experience, the trunk would sometimes be occupied to conceal additional persons in the vehicle. (*Id.* at 17.) In the trunk, Duncan found a large paper bag that contained a shoe box. The bag had tipped over and the shoebox had partially fallen out of the bag. (*Id.* at 21, 34.) The shoe box was not open, but there was a hole in the side of the shoebox, which apparently was the size of a person's finger and used to open the

---

[2] Despite the fact that the vehicle operated by Defendant was a rental, the court refers to it herein as "Defendant's vehicle" for the sake of clarity.

4

shoe box. (*See* Doc. 73-4.) Through this hole, Marshall Duncan saw what he believed to be currency. Believing the currency to be related to drug trafficking, Marshall Duncan opened the box and discovered cash in an amount later determined to be $79,320. (Doc. 73-3, pp. 19, 63-64.)[3] After clearing the trunk of the vehicle, Marshall Duncan called the Harrisburg Police Department's Vice Division ("Vice"), which is predominantly tasked with investigating crimes related to drug trafficking and prostitution in Harrisburg. (*Id.* at 25-26, 42.) While waiting for Vice to arrive, Marshall Duncan secured the residence, meaning that he entered the residence to ensure that no one entered or exited until Vice arrived with a valid search warrant. (*Id.* at 26.)

Detectives Jason Paul ("Detective Paul") and Nicholas Ishman ("Detective Ishman") of Vice arrived on the scene and secured the shoe box and money found in the vehicle. (*Id.* at 42-43, 68-70.) Per standard procedure, Detective Ishman secured the box by taping it with evidence tape and signing it along with Marshall Duncan. (*Id.* at 44.) He then delivered the sealed box to his partner, Detective Paul, for processing and entered the residence. (*Id.* at 45.) Detective Paul testified that it was standard procedure to perform an inventory of any vehicle that was to be towed to ensure that there were no valuable items in the vehicle. (*Id.* at 69.) He stated that this policy was to prevent owners of the vehicle from later claiming that items of

---

[3] An additional $1,550 was found inside the residence. (Doc. 29-3.)

value were missing from the vehicle when it was recovered from impound. (*Id.* 70.) Because Defendant's vehicle had struck a parked car, it was standard procedure to have that vehicle towed from the scene.

After securing the shoebox and money, Detective Paul indicated to Detective Ishman that he would be applying for a search warrant for the residence. (*Id.* at 46.) Detective Paul initially asked Defendant's girlfriend, Mikia Slone ("Slone"), for permission to search the residence, which she declined. (*Id.* at 75.) Detective Ishman told Detective Paul, incorrectly, that the relevant address was 648 South 21st Street, but the correct address was 748 South 21st Street. (*Id.* at 46, 74.) This error was overlooked at the time, and the search warrant was obtained for the incorrect address. In reliance on the validity of the search warrant, Detectives Ishman and Paul began searching the residence. (*Id.* at 47.) Detective Ishman later noted this error in his report of the incident. (*Id.* at 49-50; Doc. 29-3, p. 14.) After Detective Paul obtained the search warrant, an Investigator with Vice, Karen Lyda ("Investigator Lyda"), photographed the interior and exterior of the residence and the vehicle. (Doc. 73-3, pp. 47-50, 77, 98.)[4]

---

[4] Defendant, against the advice of counsel, took the stand to testify on his own behalf at the suppression hearing. At the hearing, he disputed Investigator Lyda's testimony that she did not photograph the residence until after the search warrant was obtained. He stated that he witnessed a female officer opening the trunk multiple times and photographing prior to Detective Paul obtaining the warrant. (Doc. 73-3, p. 105.) It does appear that Investigator Lyda did photograph the shoebox and money prior to Detective Paul obtaining the search warrant. (Doc. 29-3, p. 12 (report of reporting officer stating that Detective Paul delivered the shoebox to him prior to applying for the search warrant).) Defendant also stated that he was not attempting to flee when

The Detectives of Vice performed a search of the residence. (Doc. 73-3, p. 65.) During the search, members of the Task Force located the following items:

    1. Taurus 9mm handgun, serial number TKR74986 and magazine laying on the bed in the master bedroom

    2. .45 caliber ammunition in the kitchen

    3. Five large vacuum sealed bags of marijuana in the bedroom

    4. Bags of cooking and packaging materials, including two blenders, 2 glass measuring cups, two sifters, three digital scales, 4 bottles of benzocaine hydrochloride, Arm and Hammer baking soda, a bag of confectioner's sugar, a bag of small Ziplock style baggies, a box of sandwich bags, a kilogram press, measuring spoons, Rubbermaid containers and spoons

    5. Bag of white powder

    6. Money counter

    7. Mail for Defendant

    8. Defendant's wallet

    9. Black holster in the master bedroom

    10. Five cellular telephones

    11. $1,550 in U.S. currency

    12. An owe sheet

(Doc. 29-3, pp. 3-8.) Members of the Task Force packaged the evidence and processed it according to standard procedure. (Doc. 29-3, p. 14.)

---

he hit the parked car, but instead was forced to the side of the road by Marshall Duncan. (*Id.* at 108.)

## II. <u>Legal Standard</u>

The United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). "The applicable burden of proof is by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## III. <u>Discussion</u>

### A. Suppression Motions

#### i. *Evidence Found in Defendant's Vehicle*

Defendant argues that the shoebox and cash found in the trunk of his vehicle should be suppressed because Marshall Duncan effected the search without a warrant and without probable cause. Specifically, Defendant argues that the search to clear the car of potential dangers or other occupants was a pretext either to search the vehicle for evidence of a crime generally or because Marshall Duncan had witnessed Defendant place a paper bag in the trunk prior to the initiation of the arrest.

Under the Fourth Amendment, warrantless searches and seizures are presumed to be unreasonable unless an exception to the warrant requirement applies. *California v. Acevedo*, 500 U.S. 565, 580 (1991). The government bears the burden

of proving by a preponderance of the evidence that each individual act constituting a search under the Fourth Amendment was reasonable. *Ritter*, 416 F.3d at 261; *Matlock*, 415 U.S. at 177 n.14. Exceptions to this general rule exist if the search incident to arrest is based upon the need to (1) preserve evidence of the crime of arrest or (2) maintain officer safety. *Chimel v. California*, 395 U.S. 752, 762-65 (1969); *Arizona v. Gant*, 556 U.S. 332 (2009). Moreover, an exception exists where police take an inventory of the vehicle pursuant to standard procedure for non-investigative purposes. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).

Defendant argues that neither of the first two exceptions apply because he was not near the vehicle at the time of the arrest and could not have accessed any items in the trunk of the vehicle, so officer safety was not a concern, and there was no legitimate connection between the crime for which he was being arrested and any items in the trunk because he was arrested for violations of the terms of his supervised release committed prior to the date of arrest. The court need not consider, however, whether Marshall Duncan's initial search of the trunk was lawful because the evidence contained within the trunk would have inevitably been discovered by Detectives of the Harrisburg Police Department.

When Marshall Duncan attempted to pull Defendant over to the side of the road, Defendant swerved and struck a parked vehicle. Regardless of whether he was intending to flee or was forced to the side of the road, his vehicle was involved in a

traffic accident. Detective Paul testified that it is standard practice for Harrisburg Police to inventory vehicles to be taken to impound following an accident or arrest. Even if Marshall Duncan had not opened the trunk at all, Harrisburg Police would have conducted an inventory search of the car immediately prior to towing it away from the scene of the accident.

> Under the inevitable discovery doctrine, "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." The Government can meet its burden by establishing "that the police, following routine procedures, would inevitably have uncovered the evidence." The inevitable discovery analysis focuses on "historical facts capable of ready verification, not speculation."

*United States v. Stabile*, 633 F.3d 219, 245 (3d Cir. 2011) (citing *Nix v. Williams*, 467 U.S. 431 (1984); *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998) (internal citations and quotations omitted)). "Impoundment constitutes a reasonable course of action when the owner of a vehicle abandons it, or law enforcement cannot identify the owner." *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (holding that a search of a defendant's car on property under investigation was valid under the inevitable-discovery doctrine because standard DEA practice would have required an impoundment and inventory of the vehicle) (citing *South Dakota v. Opperman*, 428 U.S. 364, 375 (1976)). The facts of this case fit squarely in the bounds of the inevitable-discovery doctrine and investigative

10

searches pursuant to impoundments. Detective Ishman testified that it was standard procedure to inventory vehicles prior to impoundment to catalog valuable items. (Doc. 73-3, p. 70.) Thus, assuming, *arguendo*, that Marshall Duncan's search was invalid, members of the Harrisburg Police Department would inevitably have been called to remove the vehicle and would have searched the vehicle to inventory it according to standard practice and procedure. Accordingly, the shoebox and money contained therein need not be suppressed.

### ii. *Evidence Obtained from Defendant's Residence*

Defendant next argues that the evidence recovered from a search of his residence was invalid. Specifically, Defendant argues that the search warrant is invalid based solely on an error in the numerical address of the residence. Detective Ishman incorrectly relayed the address to Detective Paul as 648 South 21st Street, Harrisburg Pennsylvania rather than 748 South 21st Street, Harrisburg Pennsylvania, and, thus, the address listed on the search warrant was incorrect. Although "minor irregularities" and typographical errors should not be allowed to defeat what would otherwise support a finding of probable cause, *United States v. Sirmans*, 278 F. App'x 171, 173 (3d Cir. 2008), the search warrant standing alone may not be sufficiently particularized because it contains no other identifying information aside from the street address of the residence. Even if it did not meet this requirement,

11

however, the search would not be invalid because of the "good faith exception" to the warrant requirement.

The good faith exception allows the inclusion of evidence obtained pursuant to a search warrant later held to be invalid unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). The good faith exception applies unless: (1) the affidavit supporting the warrant was deliberately or recklessly false; (2) the magistrate did not act in a neutral or detached fashion; 3) the affidavit supporting the warrant was also lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was facially deficient and did not particularize the place to be searched or the thing to be seized. *United States v. Zimmerman*, 277 F.3d 426, 436-437 (3d Cir. 2002). Because the officers were physically present at the relevant residence and were aware of the general area to be searched, there is little concern that the officers would be confused by the typographical error, and they would have little basis to conclude that the warrant was invalid. Further, none of the factors set forth in *Zimmerman* are present in this case. The affidavit was not recklessly or intentionally false. Detective Paul testified that he relied on Detective Ishman's misrecollection of the address. There is no evidence that the Judge did not act in a neutral or detached fashion. The affidavit of probable cause was quite descriptive, referring to the site of the initial

arrest, the residence Defendant was observed leaving, and the residence of Defendant and his girlfriend, Slone. The affidavit also makes note of the money found during the initial search as well as voluntary statements by Slone that Defendant dealt marijuana from the residence. These details are far from lacking in indicia of probable cause. Finally, aside from the single misplaced digit, there is no facial deficiency in the warrant. Accordingly, the court concludes that the officers relied upon the validity of the warrant in good faith while conducting the search, and, thus, the evidence obtained from that search need not be suppressed.

### B. Motions to Dismiss Indictment

#### i. *Double Jeopardy*

Defendant first moves to dismiss the indictment under the Double Jeopardy Clause of the Fifth Amendment which provides, in pertinent part: "nor shall any person be subject for the same offence twice put in jeopardy of life or limb." U.S. Const. amend. V. Despite acknowledging case law to the contrary, Defendant argues that the court's revocation of supervised release precludes prosecution of the charges in the instant indictment. It is well-settled that revocation of a defendant's term of supervised release based upon the same conduct of new charges does not violate the Double Jeopardy Clause because the term of imprisonment following the revocation is considered part of the original sentence. *Johnson v. United States*, 529 U.S. 694, 700 (2000); *United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006).

13

In *Johnson v. United States*, the Supreme Court addressed whether Double Jeopardy attaches when a defendant's actions in violation of terms of supervised release are criminal in their own right. *Johnson*, 529 U.S. at 700. The Court concluded that prosecution of the acts giving rise to the revocation of supervised release does not implicate double jeopardy because the revocation is based upon the "breach of trust" shown by the defendant in violating the terms of his release rather than the criminal nature of the acts themselves, and the subsequent term of imprisonment relates back to the original offense rather than a future offense that may arise from those same criminal acts. *Id.* Put more plainly, when a court sentences a defendant to a term of supervised release, the court places trust in the defendant that he will abide by the conditions imposed by the court. If the defendant fails to abide by these terms, the court may impose an additional term of imprisonment that is tied to the original offense because the defendant failed to uphold the conditions placed upon him by the court at the time of sentencing, not necessarily because of the criminal nature of the acts resulting in revocation.

Although Defendant concedes that this general rule would not implicate the Double Jeopardy Clause, he points to a recent decision by the Tenth Circuit that announced an exception to this rule and is currently under consideration by the Supreme Court. *United States v. Haymond*, 869 F.3d 1153 (10th Cir. 2017), writ of certiorari granted, ___ U.S. ___ , 2018 WL 3008875 (October 26, 2018). Although

14

a review of this decision is an illuminating academic exercise, the facts of Defendant's case do not fit the exception set forth by the Tenth Circuit. In *Haymond*, following a conviction for possession of child pornography, the defendant was sentenced to a term of imprisonment of 38 months and a term of supervised release of ten years. After his release from prison, the defendant's term of supervised release was revoked after the district court found by a preponderance of the evidence that he had possessed child pornography. As the Tenth Circuit explained, Section 3583(k) of the Sentencing Code mandates that, if the district court finds, by a preponderance of the evidence, that the defendant committed certain offenses in violation of his terms of supervised release, the court *must* impose a minimum term of imprisonment of five years to life. *Haymond*, 869 F.3d at 1162 ("A violation that is the commission of 'any criminal offense under chapter 109A ["Sexual Abuse"], 110 ["Sexual Exploitation and Other Abuse of Children"], or 117 ["Transportation for Illegal Sexual Activity and Related Crimes"] , or section 1201 ["Kidnapping"] or 1591 ["Sex trafficking of children or by force, fraud, or coercion"], for which imprisonment for a term longer than 1 year can be imposed,' however, is governed instead by [18 U.S.C.] § 3583(k), which, when read with [18 U.S.C.] § 3583(e)(3), requires a mandatory term of reimprisonment of at least five years and up to life."). The Tenth Circuit held Section 3583(k) unconstitutional because "(1) it strips the sentencing judge of discretion to impose punishment within the statutorily

15

prescribed range, and (2) it imposes heightened punishment on sex offenders expressly based, not on their original crimes of conviction, but on new conduct for which they have not been convicted by a jury beyond a reasonable doubt and for which they may be separately charged, convicted, and punished." *Id.* at 1162.

In contrast, Defendant's supervised release was revoked pursuant to Section 3583(e)(3), which does not impose a mandatory minimum sentence or deprive the district court of discretion to impose a reasonable term of reimprisonment. Moreover, Defendant cites to no case which has held Section 3583(e)(3) unconstitutional, and this court has found no such case. *See Dees*, 467 F.3d at 855. Accordingly, the exception to *Johnson* announced by the Tenth Circuit in *Haymond* is inapplicable in this case, even if *Haymond* were controlling precedent to this court or the Supreme Court were to affirm the Tenth Circuit's decision. Accordingly, Defendant's motion to dismiss the indictment will be denied.

### ii. Destruction of Evidence

Defendant lastly argues that the government destroyed the shoe box and paper bag in violation of its constitutional duty to turn over exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963). This duty extends to the preservation of evidence in police custody. *United States v. Deaner*, 1 F.3d 192, 199 (3d Cir. 1993). In order to justify dismissal of a case for a violation of the duty set forth in *Brady*, a defendant must show: (1) that the evidence destroyed had exculpatory value that was

apparent prior to it being destroyed; and (2) police destroyed the evidence in bad faith rather than by mere negligence. *Arizona v. Youngblood*, 288 U.S. 51, 58 (1988). To demonstrate bad faith, the defendant must show that police knew of the exculpatory evidence at the time it was destroyed. *United States v. Jackman*, 72 F. App'x 862, 866 (3d. Cir. 2003). In the absence of bad faith, the court may consider suppression of the evidence that was withheld or destroyed. Specifically, in his brief in support of his motion to dismiss the indictment, Defendant argues that:

> If there is a tight fit between the box and bag, that tightness of fit would prevent the box from easily sliding out of the bag as alleged. If the box is not sufficiently outside of the bag, the U-shaped cutout on the box top (and the currency therein) obviously would not be in plain view. In like manner, the box and bag appear to be rectangular in shape. If so, the relative orientation of the box and bag (again, the manner in which the box fits inside the bag, lengthwise versus widthwise) also allows the finder of fact to properly assess the credibility of the officers' claim that the U-shaped cutout was in plain view.

(Doc. 74, p. 7.) *See Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004) ("impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule") (citation omitted).

Initially, the court has little evidence that the physical shoe box and paper bag are sufficiently material or exculpatory to trigger *Brady*. There are several photographs that show the relative size and shape of the box and bag that a reasonable jury could evaluate Defendant's argument. (Doc. 73-4.) The court, however, need not reach this issue for the reasons stated above relating to the

17

inevitable-discovery doctrine. Defendant's argument hinges on the idea that the cash in the box would not have been discovered because the box could not have slid out of the paper bag, thus exposing the hole in the box to Marshall Duncan's plain view of the trunk's interior. As explained above, even if the court determines that Marshall Duncan's search was unlawful, Harrisburg Police would have discovered the box and cash during their inventory of the vehicle subject to impoundment. Accordingly, the alleged impeachment value of the physical box and bag is nullified and suppression of the evidence or dismissal of the indictment is not required in this case.

## IV. <u>Conclusion</u>

For the reasons set forth above, the court finds that Defendant's vehicle and residence were subject to lawful searches and, thus, suppression of the evidence resulting therefrom is not warranted. Additionally, the court finds that the physical evidence allegedly destroyed by police holds no exculpatory value and, thus, the alleged destruction does not mandate dismissal of the indictment or suppression of the evidence under *Brady*. Further, the court finds that the revocation of Defendant's supervised release does not implicate the Double Jeopardy Clause of the Fifth Amendment. Accordingly, Defendant's motions to suppress will be denied in their entirety, Defendant's motion to dismiss the indictment pursuant to the Double Jeopardy Clause will be dismissed, and Defendant's motion to dismiss the

indictment or, in the alternative, suppress evidence will be denied. An appropriate order follows.

*s/Sylvia H. Rambo*_____
SYLVIA H. RAMBO
United States District Judge

Dated: May 2, 2019