**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 1:18-CR-263** |
| | : | |
| | : | **(Judge Rambo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAMON TODD CAREY** | : | |

## MEMORANDUM AND ORDER

### I.   Introduction

Our consideration of this case begins with a simple, somber, stark truth: Damon Todd Carey presents the paradigm of a defendant who should be detained pending trial. He is a violent drug trafficking criminal recidivist who has committed the instant offenses while on supervised release from a prior federal drug trafficking conviction. Thus, in this case, which comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), we are presented with a repeat offender who is currently detained pending trial of serious drug trafficking and firearms charges, offenses which Carey allegedly committed while he was being actively supervised by the U.S. Probation Office following a prior federal drug trafficking conviction. In fact, police discovered the evidence of Carey's current drug trafficking when they arrested him for violating his supervised release. At the time of this arrest, Carey was found in possession of $79,320 in

suspected drug proceeds, and a search of his home uncovered firearms, drugs, drug paraphernalia, and drug trafficking records.

This troubling confluence of criminal circumstances underscores in a compelling fashion why we considered Carey a danger to the community and initially ordered the defendant held pending trial. Nonetheless, the defendant seeks temporary release from custody pursuant to 18 U.S.C. § 3142 (i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century

of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II.    <u>Factual Background and Procedural History</u>

Damon Carey's life has been marked by recurring and unrelenting criminality. The defendant's criminal history began some 18 years ago, at the age of 12. Over the past two decades, Carey has faced 15 juvenile adjudications and criminal cases. This extensive criminal record is marked by several profoundly disturbing themes. First, Carey's criminal past reflects multiple episodes of explosive assaultive violence targeting family members, authority figures, and other innocent victims. Coupled with this history of violence are instances of drug use, drug possession, and drug distribution. Furthermore, the defendant has in the past indulged in a dangerous and potentially lethal combination—drug trafficking while illegally possessing firearms.

Carey has also persisted in this criminal conduct that presents a direct threat to public safety while actively serving a sentence for drug trafficking. In September

of 2009, Carey was convicted in federal court on charges involving the distribution of more than 50 grams of cocaine base. Sentenced to 120 months imprisonment and five years of supervised release, Carey was still serving this supervised release term at the time of the events which led to his current federal drug trafficking and firearms indictment. Indeed, the drug trafficking and firearms offenses alleged in this indictment were initially discovered when Carey was arrested for violating his supervised release and the defendant's supervised release. At the time of his arrest, law enforcement recovered a handgun, drugs, paraphernalia, records of drug dealing and $79,320 in cash. Ultimately, Carey's supervised release was revoked as a result of this criminal recidivism.

On August 8, 2018, the defendant was charged in a three-count indictment with distribution of marijuana and cocaine, as well as possession of firearms during drug trafficking in violation of 21 U.S.C. § 841 and 18 U.S.C. § 924 (c).[1] Initial proceedings and a detention hearing were then conducted in this case on September 12, 2018. At that time, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial.

---

[1] Carey currently faces a superseding indictment, which charges the defendant with conspiracy, distribution of marijuana and 500 grams or more of cocaine, as well as possession of firearms during drug trafficking in violation of 21 U.S.C. § 841 and 18 U.S.C. § 924 (c).

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which detailed the defendant's social and medical history, prior history of substance abuse, and his extensive criminal record. Given this history of criminal conduct, violence, firearms possession and supervision violations, the pretrial services report issued in this case found that Carey presented both a risk of flight and a danger to the community. Accordingly, that report recommended that the defendant be detained pending trial.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: We concluded that the defendant was subject to two statutory presumptions in favor of detention based upon the drug and firearms charges pending against him. We also found that the evidence against the defendant was strong, that the defendant had not been compliant with supervision in the past, and that the defendant had an extensive history of illicit drug use and possession combined with a protracted criminal history marked by violence, drug trafficking, and firearms possession. We also determined that Carey faced a lengthy term of imprisonment if convicted.

On December 16, 2019 we conducted a second hearing on a motion to reconsider this detention decision filed by Carey. At that time, we heard from Carey's proposed third-party custodians, his mother, Tami Carey, and his girlfriend, Megan Hennekey. While we accepted the good faith of these proposed third-party custodians, we denied Carey's request for release, citing his history of crime and non-compliance with court supervision.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. Beyond this generalized concern, the defendant cites scant information which would provide a basis for a finding that he possesses specific and individualized factors which heighten these medical concerns in the instant case, merely asserting that he suffers from some form of asthma.

The Government, in turn, opposes this motion, arguing that the defendant has not carried his burden of proof and persuasion under § 3142(i) to justify temporary release. As discussed below, we agree and will deny this motion.

III.   **Discussion**

A. **Temporary Release Under 18 U.S.C. § 3142**

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would

8

constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is

suffering from a terminal illness or serious injuries. <u>See, e.g.</u>, <u>United States v. Scarpa</u>, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); <u>see also</u> <u>United States v. Cordero Caraballo</u>, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." <u>United States v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing <u>United States v. Cox</u>, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); <u>United States v. Green</u>, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); <u>United States v. Steward</u>, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); <u>United States v. Hamilton</u>, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); <u>see also</u> <u>United States v. Clark</u>, No.

19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of

temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.[2]

---

[2] We note that the specific statutory context of § 3142(i), which controls here, and our prior findings that the defendant's release would present a danger to the community thoroughly distinguish this case from Thakker v. Doll, 1:20-CV-840, an immigration detention case recently decided by this court. Simply put, this case involves an entirely different statutory framework, and the compelling public safety considerations inspired by our finding that this defendant presented a danger to the community were completely absent in Thakker.

**B.  <u>The Defendant's Motion for Temporary Release Will Be Denied.</u>**

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." <u>United States v. Roeder</u>, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." <u>United States v. Lee</u>, No. 19-

CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant merely asserts that he suffers from asthma and may be pre-diabetic without making a more specific and particularized showing regarding how this condition presents an immediate and urgent concern warranting release of this violent criminal recidivist. On this score, Carey indicated that he has access to an inhaler, which he uses on an as-needed basis to address his asthma symptoms, but did not describe any other care or treatment which he required for this condition. In contrast, the Government has outlined at length the efforts being taken by the U.S. Marshals and the prison facilities that house Marshal detainees to ensure the safety and well-being of these prisoners, and has noted that there have been no reported cases of COVID-19 in the prison at this time.[3]

---

[3] We recognize, as defense counsel has pointed out, that this fact may have only limited evidentiary significance due to the reported asymptomatic transmission of the coronavirus. Nonetheless we find that the absence of any detected cases of COVD-19 in the prison has some relevance to our determination of this motion. We further note that the phenomenon of asymptomatic transmission means that for Carey—and all Americans—there simply can be no guarantees of good health in the face of this pandemic. Indeed, this phenomenon makes it entirely possible that we could expose Carey to the coronavirus by releasing him into an environment with asymptomatic carriers of this disease.

More is needed here for the defendant to carry his burden of proving compelling reasons justifying the release of this repeat offender. As we have observed:

> [E]ven if the defendant was currently suffering from asthma, we have found numerous cases from courts who have had the opportunity to consider whether asthma justifies pre-trial release, and the vast majority of courts have determined that it does not. See, e.g., United States v. Christian, 2020 U.S. Dist. LEXIS 60103 (D. Md. Apr. 6, 2020) (denying temporary release on grounds of underlying asthma diagnosis); United States v. Tucker, 2020 U.S. Dist. LEXIS 59516 (D. Md. Apr. 3, 2020) (collecting cases) (severe asthma, high blood pressure and high cholesterol insufficient to justify temporary release); United States v. Pritchett, CR 19-280, 2020 WL 1640280, *3 (W.D. Pa. Apr. 2, 2020) (asthma diagnosis insufficient to grant temporary release); United States v. Crosby, 2020 U.S. Dist. LEXIS 58189 (D. Md. Apr. 2, 2020) (previous diagnosis of pneumonia, asthma, and a need for an albuterol inhaler insufficient to allow temporary release); United States v. Jones, 2:19-CR-00249-DWA, 2020 WL 1511221, *3 (W.D. Pa. Mar. 29, 2020) (hypertension, sleep apnea, and asthma were not sufficient to grant temporary release); United States v. Gileno, 2020 U.S. Dist. LEXIS 47590 (D. Conn. Mar. 19, 2020) (high blood pressure, high cholesterol, asthma, and allergies insufficient to allow temporary release). These cases are particularly important to our analysis here, given that the defendant has not provided us with any documentation of this alleged medical condition.

United States v. Miller, No. 1:19-CR-259-006, 2020 WL 1939586, at *6 (M.D. Pa. Apr. 22, 2020). Thus, Carey has failed to make the necessary threshold individualized medical showing to secure release under § 3142(i).

We must then weigh these generalized health concerns against the substantial public safety considerations which led us to order the defendant's detention in the

first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: Carey is a criminal recidivist whose criminal history is protracted, extensive and marked by a trilogy of behavior which presents a real and present danger to public safety—violent crime, firearms possession, and drug trafficking. Further, the defendant has demonstrated that he is not amenable to supervision in the past by indulging in grave criminal conduct while serving a term of supervised release for prior serious drug trafficking offenses. Thus, the public safety concerns which animate any decision under the Bail Reform Act continue to weigh heavily in favor of the defendant's detention pending trial.

Finally, while we fully accept the sincerity of Carey's proposed third-party custodians, his mother and girlfriend, we recognize that Carey's first federal drug conviction arose, in part, out of criminal conduct which the defendant indulged in while residing with his mother in Carlisle, Pennsylvania. Carey's willingness to engage in drug trafficking from his mother's home without her knowledge strongly suggests that he would not be amenable to bail supervision by this proposed third-party custodian. Likewise, Carey's paramour, Ms. Hennekey, while doubtless well-meaning, has only known Carey through a largely long-distance relationship which began a year ago while he was in custody. Given the limited nature of this relationship, we are not sanguine that she would be fully prepared to face the

demands of undertaking full-time, in-person supervision of the defendant, whose history is marked by repeated entanglements with the criminal justice system and entailed violence, firearms, drug distribution, and abuse of drugs.

Moreover, to the extent the defendant raises constitutional concerns of a general nature relating to incarceration in a custodial setting during this pandemic, this argument fails as a matter of law for several reasons. At the outset, it is undeniably clear that "the Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981). Further, as a legal matter it is well-settled that "[p]retrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). See Graham v. Connor, 490 U.S. 386, 392 n. 6 (1989) (holding that "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction'"); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). A pretrial detainee's claims regarding the conditions of his confinement fall within the ambit of the Fifth Amendment's Due Process clause, and the proper inquiry is "whether [the conditions of confinement] amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also Davis v. City of Philadelphia, 284 F.Supp.3d 744, 752 (E.D. Pa. 2018); Umarbaev v. Lowe, 2020 WL 1814157 (M.D. Pa. April 9, 2020) (Kane, J.).

On this score, it is well-settled that pretrial detention under 18 U.S.C. § 3142, on its face, does not violate the Fifth Amendment Due Process Clause. United States v. Salerno, 481 U.S. 739, 742 (1987). Rather, only when the conditions amount to punishment, and the detention is not reasonably related to a legitimate penological goal, are a pretrial detainee's due process rights violated. See Bell, 441 U.S. at 539; Habbard, 399 F.3d at 159-60. Thus, "[a]bsent showing of an expressed intent to punish on the part of the detention facility officials, ... if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" United States v. Cook, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.) (quoting Bell, 441 U.S. at 538-39). Specifically, in the context of the recent COVID-19 pandemic, several courts have declined to hold that a pretrial detainee's due process rights are violated simply because they are incarcerated and at a higher risk of contracting the virus. See e.g., Cook, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.); United States v. Frost, 2020 WL 1899561, at *4 (E.D. Mich. April 17, 2020); United States v. Leake, 2020 WL 1905150, at *5 (D.D.C. April 17, 2020); United States v. Stevens, 2020 WL 1888968, at *5 (E.D. Pa. April 16, 2020).

Here, the defendant asserts that the conditions at Adams County Prison are inadequate and further expose pretrial detainees to the dangers of contracting COVID-19. However, Carey also describes the use of masks by inmates and staff,

as well as regular cleaning of prison common areas, measures clearly designed to limit the spread of the disease. While the fact of pretrial detention would clearly be uncomfortable and unpleasant, nothing in Carey's presentation supports an inference that prison officials are imposing these conditions on the defendant as a punitive measure. Quite the contrary, the Government has provided us with updates from the prison that outline the precautionary steps taken by prison officials to combat the spread of COVID-19 at this institution. Indeed, as of the date of this memorandum, there have been no confirmed cases of COVID-19 from the Adams County Prison. Thus, we find that the defendant has not shown that the conditions of his confinement at Adams County Prison have violated his right to Due Process under the Fifth Amendment.

We also note that this very general and sweeping argument attacking custodial conditions at this facility is in our estimation simply too broad in its reach to constitute the type of specific compelling reason for release contemplated by § 3142(i). Indeed, if we embraced the view espoused here by Carey, we would be compelled to release *all* detainees housed at this facility simply because of the general conditions of their confinement. Since Carey has not shown that those conditions of confinement are imposed in a punitive manner or deny detainees the minimal civilized measure of life's necessities, we will decline this invitation.

Finally at the hearing conducted in this matter, Carey complained about the hardship which confinement creates for him in preparing his defense while asserting—incredibly—that despite his best efforts, he has not completed his review of discovery provided by the government over the past many months that he has been held in pretrial detention. On this score, Carey neither points to a specific identifiable hardship which would compel extraordinary relief for this defendant, nor does he identify any exigency to his trial preparations that could not be addressed through less drastic means than releasing this criminal recidivist.

Carey must make a more exacting showing in order to obtain release under § 3142(i) for the purpose of trial preparation. On this score we note that with respect to Carey's trial preparation claims:

> "[T]here is nothing unique about his situation—as opposed to all detained defendants who must assist in their defense within the limits of pretrial custody—that would make temporary release for trial preparations 'necessary' here." Villegas, 2020 WL 1649520, at *2. "If federal courts had to order temporary release just because it would aid a defendant's ability to work with counsel, the exception in section 3142(i) would swallow all detention orders." Id. Temporary release is not warranted "just because it would be helpful, preferable, or even ideal for a defendant's trial preparations." Id. "At a minimum, detained defendants seeking temporary release under section 3142(i) for 'necessary' trial preparations must show why less drastic measures— such as requests to continue the trial date (consistent with the Speedy Trial Act) or alternative means of communication (including in writing or by available remote conferences)—would be inadequate for their specific defense needs." Id.

United States v. Deshields, No. 1:19-CR-00099, 2020 WL 2025377, at *7 (M.D. Pa. Apr. 27, 2020). In the absence of any such showing, Carey's request for temporary release to engage in trial preparations must be denied.[4]

## IV.   **Conclusion**

Weighing and balancing these countervailing considerations, we conclude that the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

---

[4] Carey also complained at this hearing about what he perceived to be the delay in these criminal proceedings. A review of the docket in this case reveals, however, that any speedy trial claim is unlikely to succeed since the defendant's litigative choices—which have included an active motions practice and changes in counsel— have substantially contributed to these delays and the court has made specific speedy trial findings throughout the course of this prosecution, excluding delays from speedy trial calculations in the interests of justice. Further, it appears that a resolution of the defendant's suppression motions is now imminent and this case should be able to promptly move forward to trial. Given these facts, Carey is not entitled to temporary release on speedy trial grounds. See United States v. Loveings, No. CR 20-51, 2020 WL 1501859, at *1 (W.D. Pa. Mar. 30, 2020).

An appropriate order follows.

So ordered this 30th day of April 2020.


_/s/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 1:18-CR-263** |
| | : | |
| | : | **(Judge Rambo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAMON TODD CAREY** | : | |

## ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 30th day of April 2020.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

23